I please the court, Brett Brownscomb representing Hells Canyon Preservation Council, Kellen. Your honors, at issue in the appeal before you is the role of the judiciary in this nation and the principle recently affirmed by this court in its opinion of Headwaters v. United States Forest Service, where it stated and discussed the deep-rooted historic tradition that everyone should have to this day in court. Forest Service would have you affirm the underlying district court decision and erode this principle by barring two claims, two of HCPC's claims, stemming from two separate causes of action that have never been fully or finally adjudicated on their merits. The district court wrongly applied res judicata to bar these claims because the final adjudication on the merits prong of the res judicata doctrine was never satisfied here. The record for review is the res judicata decision by the lower court. In light of HCPC's arguments in appealing this argument, the Forest Service has shifted its focus to statute of limitations and standing. First, to address the res judicata issue, res judicata can only preclude the litigation of a claim if there was a final adjudication on the merits in the underlying case. And your honors, there was not. What we have, as I understand it, is a situation in which you or your client stood up and said, I'm withdrawing this claim. Didn't specify whether you were withdrawing it with or without prejudice, right? Correct. Is there anything, do we have a transcript about exactly what was said at the time of that withdrawal? Your honor, I looked for the transcript and was unable to locate it. The recorder who worked at the time, I actually emailed with her, couldn't get the transcript and the court's records didn't have it. I tried to get that. It's not in the record or available as to what was actually said. Correct. To the best of our knowledge. But we know from the court's opinion that it was withdrawn and from something we know that it was withdrawn because the government's map indicated the problem with the claim. Is that right? Yes, your honor. There's no dispute that in the past litigation, the 1995 Hell's Canyon case and the current HCPC case, in both cases there is a Wilderness Act claim. There's no dispute. There's what? There's a Wilderness Act claim. I understand that. I'm trying to find out why it was withdrawn. Right. And there's no dispute that it was withdrawn. The only dispute is what effect that withdrawal should have. I understand that. I'm trying to find out why it was withdrawn and what was said about why it was withdrawn. The only thing that was said, and I've reviewed the attorney who handled that case for HCPC's files, he was unable to remember other than the fact that it was withdrawn because HCPC at the time did not feel, based on the discovery it had done, it didn't feel it had the evidence  to do with the court. He says in his order, it was withdrawn and therefore the summary judgment was moved. And then in his final judgment doesn't specify that it was withdrawn without prejudice. So there's a Rule 41 issue. Correct. And both parties, your honor, can see that Rule 41B applies. The dismissal in the lower court is a dismissal that properly falls under Rule 41B. If it's under Rule 41B, don't you lose? No, your honor. Rule 41B applies. It states as follows. A dismissal not otherwise provided for in Rule 41, meaning a dismissal that wasn't clearly voluntary, and there's a dispute over that in this case, wasn't clearly voluntary under 41A, then it falls under 41B and 41B shall operate as an adjudication on the merits unless the dismissal was for lack of jurisdiction. So your presumption sort of in 41B is that it was with prejudice. Correct. But there is a savings clause and a clear exception. There are three clear exceptions, one of which is if the dismissal was for lack of jurisdiction, prejudice does not apply. If it was withdrawn, that's not lack of jurisdiction. No, your honor, it was withdrawn, but the final adjudication on the merits in that case clearly stated in the opinion, order, and judgment that HCPC's will intersect claim is dismissed as moot. Motions on that claim are dismissed as moot because of the withdrawal. But where does it say that? I thought it said it was dismissed, and then it said all motions are dismissed as moot. It says in the opinion and order, your honor, it says at the hearing on the party's motions for summary judgment, plaintiff withdrew that claim. Accordingly, defendants in plaintiff's motion for summary judgment on that claim are moot. Right. Motions are moot because there's no claim for it to act on, but that doesn't say anything about lack of jurisdiction. Well, your honor, if there's ‑‑ if the claim has been withdrawn. I'm sorry? If the claim has been withdrawn and there's nothing ‑‑ mootness arises when ‑‑ Well, the motion was moot, but the claim wasn't moot. You're suggesting that the fact that you had withdrawn it deprived the court of jurisdiction and therefore under 41B you're entitled to the jurisdictional exception. Correct. But the act of no jurisdiction was your act of withdrawing the claim, not because of any wanted jurisdiction in the suit that's initially filed. Correct, your honor. The withdrawal of the claim removed jurisdiction from the court. Plaintiffs were entitled, we believe, to withdraw that claim. I actually thought that you were claiming in order. Your better contention is that this was essentially a sub salientium 41A2 dismissal, i.e., a dismissal by the district court not on the merits because of withdrawal. But I don't see how it could be a 41B dismissal and work for you. Your honor, we believe that the claim was withdrawn voluntarily and 41A should apply. Defendants have disputed that and I could get into ‑‑ we could argue back and forth all day about whether it was voluntary or not. What the two parties do agree on is that 41B applies to the dismissal. And in looking at 41B, it applies to dismissals of actions. In the cause of action, it was dismissed. Whether you characterize it as the withdrawal of the motion or withdrawal of the claim was HCPC's Willingness Act. Mootness is clearly a jurisdictional basis or currently a jurisdictional issue. And the Supreme Court has stated that in the case of Los Angeles County v. Davis. I'm having a problem with this. Who ever said that the claim was moot? The claim wasn't moot. Did the district court ever say the claim was moot? No, your honor, the district court never reached the merits of the claim. And it could not, HCPC could not advance the claim or did not feel it should advance the claim and properly had a right to withdraw it because it didn't have the evidence it needed. Where is the jurisdictional problem? The jurisdictional problem is that the only basis for the removal of the claim, your honor, is the only basis of the dismissal in that case, which is that the dismissal is the judicial action to which 41B applies. The only grounds for that dismissal is mootness. And as this court affirmed in its case of Headwaters v. Forest Service, and currently the opinion is unpublished, but it's for publication. And I'll furnish a copy to the opposing counsel for its convenience. And to the clerk for the court's convenience. Your honor, as recently affirmed by this court, race judicata can only apply to a judgment that actually passes directly on the substance of a particular claim before this court. And that's at page 2,129 and 30, footnote 4 of this court's recent Headwaters decision. That case cited in turn, this court cited Supreme Court decision in Semtec International Incorporated v. Lockheed Martin, 531 U.S. 497-2001. The Supreme Court in that case said it is no longer true that a judgment on the merits is necessarily a judgment entitled to plain preclusive effect. That under Semtec and under Headwaters, that if something is a 41B dismissal, it is preclusive in that same court of the same parties. And that's what we've got here, right? Correct, your honor. So it's irrelevant. You're saying that the Semtec is a case by the same parties in the same district court? Correct, your honor. But there was never an adjudication on the merits of plaintiff's willingness act claim. It was withdrawn. And whether defendant characterizes the dismissal as a dismissal of the motions or a dismissal of the actual claim, the effect is the same. The plaintiff has never had an adjudication on the merits of its willingness act claim. For that reason, given the Semtec decision, this court's recent Headwaters decision, and a variety of other cases that actually cite the restatement of judgments, the preclusive effect of res judicata should not apply. Moving on to the statute of limitations issue, and I'd like to reserve about eight minutes of my time for rebuttal, so I'll try to cut myself off there. The district court never addressed the Forest Service's statute of limitations argument, in its opinion, in 1995. It didn't address anything other than res judicata. Pardon me, your honor, I can't hear you. On statute of limitations, it should be remanded to the district court, your honor. I think this case, plaintiff contends this case was wrongly decided based on res judicata grounds, and that's the record before you. I think that's the record. The court should not be remanded as a bylaw. I think the court should find the reversal of the res judicata decision is proper because the court plainly erred where it found... But we're talking about what should happen. If you prevail on that, should we then reach the statute of limitations question, or remand it, and why? No, Your Honor. The court need not reach the statute of limitations question if it finds for plaintiff on the res judicata issue. Well, that's an alternate ground on which the decision could be affirmed. We have the authority to decide it on that basis. I'm asking you whether we should, in your view, and if not, why not? No, Your Honor. Plaintiff contends that the court should not because, first of all, the statute of limitations argument was only raised by defendant at the district court level in its memo in support of its motion to dismiss as to HCPC's Wilderness Act MAP claim. The statute of limitations argument can be waived. That proposition is supported by the case that the defendant cites for the statute of limitations argument. They are the ones who are moving to dismiss, and they can move to dismiss on fewer than all grounds. They can go back, and they can do it on another ground. They can, Your Honor, but they have no first summary judgment on that. If defendant has not raised the statute of limitations argument as to HCPC's Wilderness Act claim in the proceedings below, it has effectively waived that claim. In the case of Cedars- For purposes of the motion that was before the court, it hasn't waived it permanently. No, Your Honor, but in the case of Cedars-Sinai Medical Center v. Shalala, effectively the same thing happened. The government raised the statute of limitations argument at the appellate level after only raising it in its reply memorandum supporting its motion to dismiss. What happens here specifically? Your representation is that there was no limitations act question raised with regard to the Wilderness Act issue in the district court, only on the map issue. Correct. Only on the HCNRA Act map claim. And on that claim, Your Honor, the statute of limitations defendant has two theories, that it began to toll in 1981 or in 1994. On the map claim, it's clear that that claim was not part 1995 HCPC litigation at all. It wasn't raised. There was no map issue referencing the map referred to specifically in the Health Care Act. No, but plaintiff's knowledge of a legal injury does. And plaintiff's knowledge of that legal injury, which is the absence of a specifically required map in a specific location as specifically directed by a statute. Knowledge that that map didn't exist in that location, much less it hasn't been produced at all, did not occur until the Forest Service responded to HCPC's Freedom Information Act request in 2002. HCPC had no knowledge. That would be very important, whether the map existed or not. If you didn't find out about it until 2002 and this litigation is based on a whole series of events, over years, nobody seemed to care whether the map was there or not. Your Honor, the reason the map is important, the map itself doesn't demonstrate exactly where or whether. I don't mean it shouldn't have been a map, but the idea that it wasn't maintained in the headquarters in Washington. And nobody really cared all those years. All those years it was that the map. You assumed there was a map in Washington. Right. Nobody went to look at it. Nobody asked about it. Nobody cared. Correct. I don't know why anybody cares now. Because it's important to demonstrate a congressional intent for the location of that wilderness boundary. If without the map, all we have to demonstrate the location of the wilderness boundary is defendant's 1981 wilderness boundary description, that map is a piece of evidence that is critical to plaintiff's ultimate interest in motorized free wilderness. Without the map. That's why I don't understand why nobody asked to look at it in 1997 or whenever it was. You walked around and did all of this and found the boundaries. And all of a sudden you file a suit. And during all this period, nobody said, what does the map say? Correct. Your Honor, there's a good reason for that. And the reason is that up to 2002, the understanding of all parties, and certainly of plaintiffs, was that the hydrologic divide represented the wilderness boundary. That was the forest service's definition of the wilderness boundary when it, in 1989, issued a decision to relocate the road because it crossed over the wilderness boundary, which at that time it defined was the hydrologic divide. In 2002, that was the first time the agency had ever stated that the boundary was anything other than the hydrologic divide. At that point, it became very important to know, OK, well, if this is the agency's reinterpretation of its wilderness boundary and the terms in its 1981 description, what did Congress intend the boundary to be? Weren't there other copies of this map that were maintained in regional offices? Your Honor, there may be. We have not seen one. Defendant contends that it did provide that map, a copy of that map, in response to a FOIA request. Oh, is this the one on the box marked irrelevant? That's right. And it's in a box, well, six boxes of volumes of papers marked irrelevant. Frankly, HCPC was looking through, looking for a needle in the haystack on that, and it wasn't intentionally looking for that map because, based on the Hills Canyon Act requirement that the map be in Washington, D.C., they had no reason to suspect that the map would be in that shitty box. You wanted to save eight minutes. I'll down to two. You wanted to save eight minutes? I just never would. I would, Your Honor. I'll down to two. And with all due respect. We'll try to squeeze you a little more. Thank you. All right, thank you. Good morning, Your Honors. My name is James Kilborn. I'm from the Department of Justice in Washington, D.C. I would like to start first with the statute of limitations argument and then talk about the race judicata issue. And I think it would be helpful to the Court to explain the framework of this statute because I think it will set. Well, start with the idea of counsel said that you only raised the statute in the district court with respect to the map claim. Do you disagree with that? The statute of limitations? Yes. With me at counsel table is Jeff Handy, who was the trial attorney, and I conferred with him when plaintiff's counsel made that claim. And he is not positive, but his recollection is that we asserted that as to both of the claims in the lawsuit, to all of the claims in the lawsuit. And I think even if we did not, I think that the statute of limitations ground is an alternative ground for the Court to affirm the dismissal here. If you didn't raise it, then there was no basis for us to reach it. Well, we certainly did raise it as to one of the claims. We will be glad to provide. The reason it matters, I mean, quite aside from whether there might be circumstances in which we could reach it, there is a factual component to it, or arguably a factual component, because we're talking about inquiry notice and discovery and so on. There may be facts that are relevant to that. Well, I don't think the key critical facts for purposes of statute of limitations are in dispute. And I would like to explain that in terms of how this statute works. Congress created this Recreation Act area with the wilderness in 1975. And the governing statute has, the critical part of it has two components. It says it is creating the whole recreation area and the wilderness area in a court, or as generally depicted, and that is the statutory phrase, generally depicted on the 1978 map. It then went on to direct the Secretary of Agriculture to do a detailed boundary description. And again, that's the key phrase, a detailed boundary description of the entire recreation area and the wilderness area. And to publish it, which we did. You didn't. We published notice of the availability of that. That notice of availability said that these are the legal descriptions and the detailed maps identifying the entire recreation area and the boundaries of the wilderness. If the plaintiffs are going to assert that that legal description, the 1981 legal description, is inconsistent with congressional intent, that is inconsistent with the 1978 map, the statute of limitations on that argument began to run in 1981. And that statute of limitations has long gone. Now what plaintiffs are trying to do, they're trying to confuse this issue by saying the Forest Service in 2000 or 2002 has changed its interpretation, not changed its interpretation of the 1978 map, but changed its interpretation of what's contained in the 1981 boundary description. But plaintiff's argument, plaintiff's argument rests on whether the road here and the road predated the creation of this wilderness area. Plaintiff's claim is that the road extends into the wilderness area, even as defined by the map and the 1981 boundary descriptions. That's the only claim they can have is that the road incurs into the wilderness area even where the 1981 boundary descriptions are. It was definitely true that the road was in the wilderness area. But I guess what I'm really asking is this is a continuing, or either of these continuing violations, either the map issue or the road issue. In both instances you have a situation in which something, what's wrong is that somebody is driving right now on a road that perhaps shouldn't be there, and or with regard to the map, that the map is supposed to be there today as well as in 1978, and it isn't. So if somebody had been in Mars all this time and showed up now and said, you know, I would like to see that map in that place and it's not there, would they have a claim? They would. I think that's a good question. The claim the plaintiffs here basically have asserted is an APA 7061 claim to try and compel the agency to come up with the official map, not a copy of it, because they haven't been satisfied with a copy of it, even though. Unless they don't have a copy. No, no, the record shows there are copies available of the 1978 map. It is just that the original. Who cares? That's what I'm trying to understand about this case. Why is it that anybody cares if they have copies of the map and they want you to post the original? Have you lost the original? Is there any reason not to post it? The original that apparently went to the secretary of agriculture to keep on file has been lost. Well, then you can't post it. That ought to be a fairly simple case. If that's the fact and you don't have the original and you say that, what relief are they going to get? That's a very good question. Why is everybody bothering us with this? We were the defendants in the case, Your Honor. There must be an easier procedure for you to say there is no map. Do they disbelieve you? I think they did because they made this request through a FOIA request to Washington, D.C. Washington, D.C. came back and said we don't have it. They appealed that administratively. So Washington headquarters went back and looked again and said we do not have the original map. And wrote back and said we do not have it. On the other hand, they said in that FOIA response, this 1978 map has been superseded by a 1979 map accompanying 1979 legal descriptions, and they provided that map to the Forest Service. That is in the record in this case. Let's go to the other problem. The more serious problem, Judge Brzezin asked you about. There are cars driving over this road now, and let's assume it's in violation of law. That this road that goes into the forest area, people are driving up and down, spewing fumes through the forest in contravention of a statute. And your position is it's too late for anybody to raise that now, or just it's too late for these people to raise it? Our position would be, I think it our position would be, these people certainly cannot raise it because it is too late for them. I think also. In our view, the boundary was clearly established in 1981 through the boundary descriptions. The road predated that. So the facts that are necessary to inform any person about a cause of action. How about somebody, Judge Brzezin said someone was in Morris. I suppose somebody wasn't born then. Someone reaches the age of 18 tomorrow. Up until then, the statute was. The question is, when does the cause of action accrue? And the cause of action accrued. Before your birth? I cannot go back and challenge agency action that happened 50 years ago. It's not agency action that they're challenging. They're challenging the fact that cars are being driven on this road. Perhaps what they could do if they want the Forest Service to close a road, maybe they could petition the Forest Service to close the road. The question is, is it a violation of law? You're saying it can't be a violation of law. I did not say that. I did not say that. What I was talking about was whether the statute of limitations has run on their claim. And that's a different issue from whether the road crosses the boundary, whether, in fact, there is motorized traffic going on in contravention of the Wilderness Act. I thought you were saying that nobody can question any longer that this road is in violation. That's a statute of limitations issue. That's what we're talking about. We're talking about the statute of limitations. You're saying that because of the statute of limitations, no one, not just these plaintiffs, no one can ever challenge the fact that cars driving along this road, no one can allege that they're in violation of statute because, you're saying they can't be in violation of statute because of the agency action which determined that this road is not in the forest. That's correct. Now, and I don't think that's unusual. This has been an open, notorious, this road has been there for years, there has been traffic on it for years. That doesn't mean, though, that the agency itself can't correct the problem. Suppose, I mean, for one thing, you have to have an injury. And the injury in an environmental case is ordinarily the individual's aesthetic, recreational, or other interests. Suppose that all of a sudden there were a lot more cars on this road and a lot more spewing out than somebody who wasn't offended before or concerned is now concerned because it's really causing trouble. Suppose you could show that now, although not before, the fumes were killing some plants. And so you want that road, so you now have an injury you didn't have before. Why wouldn't you be able to sue on that injury when the injury developed? The plaintiff relies on cases that talk about that a cause of action doesn't accrue until the injury occurs. Or until someone is fully aware of all of the facts. And they rely on a case called ACRI. We rely on a case called Shiny Rock. Shiny Rock discusses ACRI and distinguishes that situation and makes it clear that where you're talking about federal action, the federal government, and where it publishes something in the federal register, that that is essentially constructive notice to the world and that the world can be bound by that. Well, that's what I was trying to get at. And he said it was not unusual. I wasn't questioning. I'm trying to find out what your position is. And as I understand it, then, your position is that because the agency decided in 1981 or whenever it was that this road is not in the forest, nobody now can ever challenge that, no matter how wrong it may be, because it's within the period for challenging that decision. I don't think the Court needs to go that far in this case. We're saying that in our you know, our primary argument would be a cause of action accrued in 1981. But secondarily as to these plaintiffs, the cause of action certainly would have accrued for them by 1994 when they brought their original suit. They brought that suit in 1994. They made a claim. They asserted in their complaint that a portion of the Lord Flat Road crossed into the wilderness area. They then withdrew that claim because there is a declaration that they themselves introduced into the record in this case explaining why they withdrew that claim. And they say, we realized we did not have enough evidence in light of what the Forest Service presented, enough evidence to prevail on that claim, and so we are now withdrawing it. They then, and that was in 1995, they then waited another seven years before they brought their new claim. So they were on notice that there had been a potential for a claim. That the road intruded into the wildlife, or into the wilderness area. But they waited seven years to bring a new claim on that. And that is beyond the pertinent statute of limitations. Now what happened, they were told by the Forest Service when they first brought a claim that something was incorrect? That the map was incorrect? When the 1994 litigation was filed, there was discovery that went on. And the plaintiffs asked for copies of various maps. The Forest Service provided what was called a transportation map. And on that map there is a big thick line that shows the boundary of the wilderness area. And so the plaintiffs were asserting that the road in one part touched or crossed that line. The Forest Service came back and said this big fat thick line is not the actual precise boundary. The precise boundary is a point to point line also shown on that same map. Which showed that the road would have been outside the wilderness area. And their current claim is that that map was wrong? I think their current claim is that the road crosses over, they believe the boundary to be the hydrologic divide. Now where they get that from, I'm not sure. Because I think the only claim that they can have is the boundary line is as described in the 1981 boundary descriptions. And they can assert, they could claim if they wanted to that the road crossed over where that line is. But they would have to prove that. They had the ability to do that in 1994, but voluntarily withdrew that claim. They voluntarily withdrew their summary judgment motion. At the day of oral argument on summary judgment, they withdrew their summary judgment motions. And the district court then dismissed those summary judgment motions as moot. But then also entered judgment and order where he ordered and adjudged that the action should be dismissed. And that is the basis as well for our race judicata claim. That's a very tricky thing because he appears to have thought that something was withdrawn before he dismissed it. And it's not at all clear that he was dismissing that claim rather than regarding it as having been dismissed and or withdrawn previously. And that's really the problem. Well, if there is an ambiguity in the order, it seems to us that it would have been incumbent on the plaintiffs to seek clarification of that order at the time. The judgment in that case says it is ordered and adjudged that this action, using the term adjudication, using the term action, is dismissed. The question was what was in the action at the time he dismissed it. He was of the view that what was in the action at the time he dismissed it did not include this claim anymore. It was withdrawn. It was gone. Well, he says that the summary judgment in his order, he says that the summary judgment motions are moot. He actually says all motions are moot. All motions are moot. Yes, yes. But our view is that if there was an ambiguity, it would have been incumbent upon the plaintiffs and they could have done this through a 59E motion to seek clarification. The trouble with this is you're making a nice little technical argument. But in all likelihood, in terms of what actually went on here, the district court didn't think he was dismissing that claim. He thought it was gone before he dismissed the case. Well, as has been, we do not have a transcript. I do not know if a transcript was made. We do not have a transcript. All we have is what is in the district court's published opinion and what appears in the docket sheet. And that's what we are going on. But in terms of whether this is ‑‑ I mean, I'm sure you've encountered other cases in which somebody alleges things in a complaint and then doesn't pursue them. And says ‑‑ or affirmatively says we're not pursuing that issue. Do you understand a dismissal then to embrace the issue that was affirmatively abandoned? I think that this has to be ruled or governed by what is set out in Rule 41B. Now, we've heard this morning, at least I thought I understood, plaintiffs saying two different things about whether they agreed this was a 41B dismissal or not, as opposed to a 41A dismissal. I do not think that this qualifies as a 41A dismissal. It certainly isn't a 41A1 dismissal, because that ‑‑ And so the question is, is it a 41A2 dismissal? But 41AA speaks to dismissal of actions. Not claims, but actions. And they did not dismiss their action. They only dismissed or attempted to ‑‑ they withdrew, in the words of the judge, they withdrew a claim, their Wilderness Act claim. So the question is, then, is this ‑‑ in our view, this would be a Rule 41B dismissal, which talks about, among other things, dismissals not otherwise expressly covered by the rule are brought in under 41A1. And the presumption in 41B is that those are dismissals with prejudice. The one pertinent exception being if it is a dismissal based on lack of jurisdiction. Which we don't think is the case here. If the plaintiffs ‑‑ if the plaintiffs were to do otherwise, I mean, what happened here is they litigated their case, their earlier case, all the way through to oral argument on the summary judgment stage. They realized they did not have the evidence to sustain that judgment. And so they wanted to pull it. And they did pull it. And then they say, basically, they could take as long as they wanted to, to try and develop ‑‑ and then it may run soon afterwards. But that's a different problem. I see my time is up. If you have any further questions. Thank you. Thank you. May I please court, a few things to rebut. First, plaintiffs, as to the race judicata issue, on page 10 of the four services answering brief, it admits that what H.C.P.C. withdrew was its claim. It says on page 10, with regard to the second claim, the court stated that the defendant and plaintiff's motions for summary judgment on the Wilderness Act claim are moot because H.C.P.C. withdrew that claim at oral argument. The withdrawal was on the claim. And the argument that plaintiffs withdrew a claim in the rule 41 applies only to actions really splits hairs on this. Rule 41 speaks to actions, causes of action. Causes of action is synonymous with a claim. On rule 41A2, assuming that H.C.P.C. withdrew a claim, plaintiffs concede that it did not follow the technical formalities of a 41A1 voluntary dismissal. 41A2, however, does apply to this case. Defendant disputes it and concedes that 41B applies. But on 41A2, 41A2 states, except as provided in paragraph one, an action shall not be dismissed at the plaintiff's instance, save upon order of the court and upon such terms and conditions as the court deems proper. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice. Plaintiffs voluntarily withdrew their claim. They didn't do it according to 41A1. The court did dismiss that claim, as the Forest Service concedes on page 10 of its brief. And it dismissed that claim without specifying that it was with prejudice. Presumption is under 41A2 that the dismissal is without prejudice. On the statute of limitations argument, it's at the bottom line that the rules don't exactly address this problem, i.e., the withdrawal of a claim as opposed to the withdrawal of an action, or the dismissal of a claim as opposed to the dismissal of an action. Your Honor, you're right, specifically. But I don't think there's any other way to read Rule 41 than when it speaks to actions. It's speaking to causes of action. And when you look at the race judicata case law, the result under 41A2 or 41B is the same, where there has been no adjudication on the merits of a particular claim. And race judicata does not apply in the subsequent litigation. So you have the limitations question on the Wilderness Act. Apparently, any time you wanted to, you could have, you or your client, could have gone to this place, looked at it as you're filing it in 1997, and figured out that, in fact, the road was not in the Wilderness Act. You could have done it in 1982, and you could have done it, certainly by 92, after they moved this other road around, you could have done it. And you could have done it at the time that you dismissed the earlier claim. And when you thought you didn't have the information, you could have gone up there the next day and gotten the information. So generally, federal statutes of limitations are inquiry notice statutes of limitations. And why wasn't it reasonable since you thought that perhaps there was a problem that you had to go find out, and you just couldn't sit there? Your Honor, I'm glad you asked that question. In 94, plaintiffs filed suit based on the agency's decision to relocate a portion of the road based on its own determination that that portion was within the wilderness boundary. That led plaintiffs to suspect that perhaps other portions of the road were within the wilderness boundary. It didn't know, didn't have knowledge, but it suspected it based on a transportation map. But, Your Honor, all it had to do to find out was to go there. Your Honor, the road itself, at that point in time, the road itself is a 16-mile road, a physically rugged, two-track, broken road. It's under snow nine months of the year. So in the three months of the year, you did eventually go there, and I gather it wasn't in a day or two you figured it out. Your Honor, correct. We did eventually go when, based on a 1994 litigation on discovery, that failed to produce a map, which looked to us, looked to HCPC as showing where the road did in the wilderness boundary. Defendant's own expert in that case refuted its own map, saying, well, looks like it, but really that line's inaccurate. That said to plaintiffs, okay, we don't have the specific facts, photographs, documented places on the ground where this road crosses that hydrologic divide. Defendant isn't supporting its own map. What are we going to do? We're contending here that it was plaintiff's right to withdraw that claim then, based on the insufficiency of the evidence. All right. So now you then wait three more years until you go check it out. Correct. And the reason for the waiting, as best as can be deciphered from plaintiff in the records, at that point in time, in 95, when the case was decided, it was the wintertime, the road was under snow. 1996, that involved plaintiffs. Plaintiffs at that point in time was a one-person organization, one full-time employee. That can't be the answer, right? I mean, if there was an obligation to go figure this out, but it wasn't a question of being experts, as I understand it, or not very expert experts. No. The defendant was not going to go and figure it out, as the plaintiff realized. Plaintiff did itself go out and take a look on the ground. It did it with a college intern in 97. That's when it discovered the knowledge of where the road specifically crosses the hydrologic divide. At that point in time, there were essentially two years between the time of the 1995 litigation and when plaintiff actually had knowledge. And, Your Honor, it's... The hydrological boundary hadn't shifted. You brought the prior suit. You obviously had some idea that there was a problem there. You could have taken the college intern and gone in the earlier suit. Correct, Your Honor. In 94, we had a suspicion. That suspicion wasn't affirmed. A suspicion does not trigger legal knowledge of an injury in the statute of limitations. Well, it was not a suspicion that you filed a lawsuit. Correct, and filed it based upon a map that we had that was from defendant that showed where we thought an incursion existed. And then plaintiff presented that evidence. Defendant's own expert refuted its own map. And so still we were left with the suspicion, withdrew the claim. At that point in time, plaintiff... And when it had legal knowledge. Your Honor, the statute of limitations only is triggered once a party has knowledge of a legal injury. Whether you knew or should have known, and should have known, includes being on a reasonable employee note. Correct, Your Honor. What distinguishes this case from the authorities that defendant cites in Shiny Rock and Penfold, those cases involve specific agency actions where there was a decision related to mining. There was a specific agency decision and action. That clearly triggered statute of limitations. Here there was no clear agency action triggering the statute. It was a matter of plaintiff going out... Your Honor, yes. The map in the Hell's Canyon Act was not raised at all in the 1994 litigation. It wasn't an issue there. The 1981 boundary description should not be read as triggering statute of limitations. That boundary description itself does not provide any evidence of a wilderness act violation or it speaks to the location of the boundary, not the location of Lord Flat Road. If that 1981 boundary description was so clear as to evidence a wilderness act violation, then why did it take eight years from the 1981 issuance of the description for defendant in 1989 to finally realize that a 1.5 mile segment of the road, which it then relocated, was in fact within the boundary and in violation of the Wilderness Act? On its face, just reading the... I'll give you one minute to wind up if you can. Okay. Thank you. You don't get to the conclusion that the 81 description establishes a wilderness act violation. The constructive knowledge argument that defendants raised would apply if the actual description was published in the Federal Register. That's the Shiny Rock case. In fact, the description was not. It was not because defendants asserted that it would cost too much to publish it, even though the Hell's Canyon Act specifically says publish a detailed boundary description in the Federal Register. So merely reading the Federal Register would not have put anyone on notice of a wilderness act violation. The lack of clarity on the order of much of what occurred in defendants' argument was, we contend, arguing the merits of this case. The lack of clarity in the 1995 order, defendants stated, it's incumbent upon H.C.P.C. to clarify that if the order is not clear, that it's without prejudice. This argument reverses the longstanding presumption that where an order is not clear, under Rule 41A.2, or under Rule 41B, where the order is a mootness order and a jurisdictional decision, then prejudice does not apply. The presumption is that voluntary dismissal, order is not clear from the court, presumption is that unless the parties stipulate that it is with prejudice, it's not. The defendant knew how to stipulate, and it did not do that. Thank you very much. Thank you, Your Honor. The case to be argued will be submitted. The final case of the morning is Aylward v. United States Forest Service. Thank you, Your Honor. Thank you, Your Honor.
judges: Reinhardt, Berzon, Bybee